E-FILED
Wednesday, 24 February, 2021  03:49:52 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:16-cv-10024 |
| | ) | |
| TEQUILA J. GUNN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER & OPINION

This matter is before the Court on remand from the Seventh Circuit. (Dkt. 53). Defendant filed supplemental briefing in support of her request for compassionate release (dkts. 54, 55), the Government responded (dkt. 56), and Probation filed an updated recommendation (dkt. 52) at the Court's direction. This matter is ripe for review. For the following reasons, the Motion for Compassionate Release is denied.

### BACKGROUND

In 2017, Defendant pleaded guilty to possession of cocaine base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count I) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count II). (Dkt. 21). In accordance with the plea agreement (dkt. 21), she was sentenced to consecutive terms of 36 months' imprisonment on the first count and 60 months' imprisonment on the second count, to be followed by 3 years of supervised release on each count, to run concurrently. (Dkt. 27). Defendant is currently projected to be released from BOP custody in March 25, 2024. (Dkt. 55 at 7).

In May 2020, Defendant, 62, filed a motion for compassionate release in this Court, arguing her underlying condition of Immune Thrombocytopenic Purpura ("ITP"), when coupled with the threat of COVID-19 at the facility where she was then incarcerated, constituted an "extraordinary and compelling" reason warranting compassionate release. (Dkt. 40 at 8). The Court denied her request, finding she had not "re[lied] on the three criteria enumerated" in the policy statement, U.S.S.G. §1B1.13, to which the Court concluded it was bound. (Dkt. 45 at 4–5). Defendant appealed, and the Seventh Circuit vacated the Order, holding that the outdated policy statement is not binding on district judges, and remanding with instructions "to resolve [Defendant's] motion under the statutory standard" set by 18 U.S.C. § 3582(c)(1)(A). (Dkt. 53-1 at 5). The Court of Appeals issued its mandate on January 11, 2021. (Dkt. 53-2).

In the meantime, Defendant was released from Federal Correctional Institute (FCI) Pekin to her daughter's residence on home confinement, having been approved by BOP for the Federal Location Monitoring Program under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. (*See* Dkt. 52 at 1).[1] Although Defendant is now released on home confinement, Defendant argues the Court should still grant her motion for compassionate release because BOP could "recall" her to prison and

---

[1] Defendant was scheduled for release to home confinement on December 16, 2020 (dkt. 52 at 1); during a January teleconference, defense counsel confirmed that Defendant was in fact released to home confinement on that date (dkt. 56 at 7; *see also* Minute Entry 1/11/2021).

"place[] [her] back in a life threatening situation at any time." (Dkt. 54 at 1; Dkt. 55 at 1).

## LEGAL STANDARD

The First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to ask the sentencing court for compassionate release. Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239. The decision whether to grant compassionate release is within a district judge's discretion, the standard for which is set by § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). Under the statute, there are three requirements.

First, a defendant may not bring a compassionate release motion until either (a) the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (b) 30 days lapse "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). To properly exhaust, the defendant must have "present[ed] the same or similar ground for compassionate release in a request to the Bureau as in [the] motion to the court." *United States v. Williams*, ___ F. 3d ___, No. 20-2404, 2021 WL 486885, at *2 (7th Cir. Feb. 10, 2021). This administrative exhaustion requirement, though not a jurisdictional prerequisite, is a mandatory claims-processing rule that must be enforced when properly invoked. *United States v. Sanford*, ___ F. 3d ___, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021).

Second, the defendant must either be at least 70 years of age and have served 30 years of the sentence for which the defendant is currently imprisoned, §

3

3582(c)(1)(A)(ii), or demonstrate "extraordinary and compelling reasons" for release consistent with any applicable policy statement issued by the United States Sentencing Commission, § 3582(c)(1)(A)(i). The only relevant policy statement, U.S.S.G. § 1B1.13, is outdated and not currently binding on district judges, but it provides a "working definition of 'extraordinary and compelling reasons' " that can "guide [judicial] discretion without being conclusive." *Gunn*, 980 F.3d at 1180.

Third, the Court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." § 3582(c)(1)(A).

## DISCUSSION

Although the Government previously raised an exhaustion issue (dkt. 44 at 25; dkt. 45 at 3), it does not assert any argument as to the exhaustion requirement on remand.

Regardless of exhaustion, the Court denies compassionate release in this case because Defendant's release to home confinement renders her proffered basis for compassionate release moot.  Defendant argued the risk of contracting COVID-19 in prison, coupled with her underlying condition, constituted an "extraordinary and compelling reason" warranting a sentence reduction (*see* dkt. 40 at 7–8); now that she is no longer incarcerated at FCI Pekin, she does not face such risk. Although Defendant is correct that a transfer to home confinement does not legally preclude relief under the compassionate release statute (*see* dkt. 54 at 2; dkt. 55 at 8), courts faced with similar cases have found it dispositive. *See, e.g., United States v. Gonzalez*, No. 15-CR-1247, 2020 WL 6381982, at *3 (S.D. Cal. Oct. 30, 2020) ("The Court finds

[defendant's] recent transfer to home confinement by the BOP to be dispositive in this case."); *United States v. Bradley*, No. 13-CR-20622, 2020 WL 4676377, at *2 (E.D. Mich. Aug. 12, 2020) ("Now that Defendant is serving the remainder of his term on home confinement, there is no extraordinary and compelling reason to reduce his sentence."); *United States v. Hansen*, No. 13-CR-40053, 2020 WL 5642295, at *3 (D.S.D. Sept. 22, 2020) (finding proffered reasons for compassionate release mooted by defendant's placement on home confinement); *United States v. Ogden*, No. 07-CR-900, 2020 WL 4015730, at *1 (D. Utah July 16, 2020) (denying motion for compassionate release after defendant was placed on home confinement because "the grounds for compassionate release have been satisfied by an alternative means."). Ultimately, this Court may grant a sentence reduction under § 3582(c)(1)(A)(i) only if it finds "extraordinary and compelling reasons" warrant such a reduction, and because Defendant is presently at her daughter's residence, where she is receiving adequate medical care for her condition (*see* dkt. 55 at 2) and is safe from the heightened risks of contracting COVID-19 in a prison environment, the Court finds no current "extraordinary and compelling" reason for relief currently exists.

Defendant argues the Court should nevertheless grant compassionate release because Defendant could be "recalled" to prison. (Dkt. 55 at 2). The possibility of "recall" is set out in a January 2021 Memorandum Opinion by General Counsel for the Bureau of Prisons, which states:

> "[T]he CARES Act authorizes the Director of BOP to place prisoners in home confinement only during the statute's covered emergency period and when the Attorney General finds that the emergency conditions are materially affecting BOP's functioning. Should that period end, or

should the Attorney General revoke the finding, **the Bureau would be required to recall the prisoners to correctional facilities unless they are otherwise eligible for home confinement** under 18 U.S.C. § 3624(c)(2).

(Dkt. 55-1 at 1–2 (emphasis added) (citations omitted)). Defendant contends "BOP should not be allowed to side-step this Court's authority by temporarily transferring [Defendant] to another location while retaining the ability to transfer her back to a life threatening situation at any time." (Dkt. 54 at 2).

However, the possibility of "recall" in Defendant's case is purely speculative; there is no allegation or indication that BOP has plans to transfer her back from home confinement to prison (*see* dkt. 56 at 10). This request is therefore premature. *See, e.g., Gonzalez*, 2020 WL 6381982, at *4 ("Without a showing that there is a risk BOP would actually use its authority to transfer [defendant] back to [prison] while the pandemic continues for reasons unrelated to his compliance with home confinement requirements, the Court finds that ordering a reduction of [defendant's] sentence based upon a potential future return. . . would be premature."). And importantly, if Defendant is "recalled" she would not be left without judicial remedy; Defendant could file another motion for compassionate release, and the Court would have authority to grant a sentence reduction if "extraordinary and compelling reasons" warrant relief at that time.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's request for compassionate release is DENIED.

SO ORDERED.

Entered this 24th day of February 2021.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge
